

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KORI TYLON TAYLOR (#R-42772) ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 6644 |
| ) | |
| OFFICER WATERLOO, et al., ) | Charles R. Norgle |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, currently a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, six correctional officers at the Lake County Jail, violated the plaintiff's constitutional rights by acting with deliberate indifference to his safety and by subjecting him to punitive conditions of confinement. More specifically, the plaintiff alleges that certain defendants failed to protect him from an attack by a fellow inmate; he additionally claims that he was wrongfully classified as "dangerous," with concomitant restrictions on his liberty and the imposition of inhumane conditions in the jail's segregation unit. This matter is before the court for ruling on the defendants' motion for summary judgment. For the reasons stated in this order, the motion is granted.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of*

*Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## **FACTS**

The defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1(a)(3) (N.D. Ill.). The defendants also served on the plaintiff the mandatory notice under Local Rule 56.2, explaining the requirements of the Local Rules and warning the plaintiff that his failure to respond with appropriate evidentiary support could result in entry of judgment against him. (Document no. 51, Notice to Pro Se Litigant.) Notwithstanding the admonition, the plaintiff's response fails to comply with the court's Local Rules. The plaintiff does not respond to the defendants' statement of facts; he has simply set forth a number of his own factual points (almost all relating to the denial of a mattress in segregation) without any citations to the record in support of his factual assertions. But unsupported statements in a brief are not evidence and cannot be given any weight. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

The plaintiff's failure to controvert the facts as set forth in the defendants' statement results in those facts being deemed admitted. *Id.* A litigant's failure to respond to a Local

Rule 56.1 Statement results in the court considering the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L/L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). The court need not "scour the record to locate evidence supporting a party's legal argument." *Argyropoulos v. City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008), *quoting Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

Although courts must construe *pro se* pleadings liberally, see *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006), a plaintiff's *pro se* status does not absolve him from complying with these Local Rules. *See Greer v. Board of Ed. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") A plaintiff's self-serving statements, which are speculative and supported by specific, concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

Because the plaintiff is proceeding *pro se*, the court will consider the factual assertions he makes in his brief, but only to the extent that the plaintiff could properly testify about the matters asserted at trial–that is, only with respect to those facts within the plaintiff's personal knowledge. *See* Fed. R. Evid. 602. The court therefore finds that the following facts, as set forth by the defendants in their uncontested statement of facts and

supported by citations to the record, are undisputed [the court has also included the plaintiff's additional facts]:

The plaintiff, currently a state prisoner, was an inmate at the Lake County Jail at the time of the events giving rise to this lawsuit. (Complaint. p. 2.) The defendants, Officers Waterloo, Johnson, Navarro, Wathen, and Witherspoon, were all correctional officials at the jail. (*Ibid.*)

In early October 2007, the plaintiff and fellow inmate Ryan Rice were both confined in the jail's administrative segregation unit. (Defendants' Exhibit A, Deposition of Kori Taylor, at pp. 76-77.) During the week leading up to October 12, 2007, the plaintiff and Rice "had words and stuff like that." (*Ibid.*) The plaintiff recalled that the dispute was "something small, something petty. It wasn't nothing serious. . . . It was like some gossip type stuff." (*Ibid.*) Apparently, Rice had indicated that he was going to take responsibility for having flooded his cell, but then became angry when the plaintiff reported him. (*Id.*, pp. 79-80.) Rice made some vaguely threatening remarks to the plaintiff. (*Id.*, pp. 77-78.) No officers heard the two inmates argue and the plaintiff never either reported the threats or asked to be kept separate from Rice. (*Id.*, pp. 77-79.) The plaintiff was "not really worried" about Rice. (*Id.*, p. 79.)

On October 12, 2007, Rice was released from jail. (*Id.*, p. 77.) At the time Rice was being escorted out of the segregation unit by defendants Waterloo and Johnson, the plaintiff happened to be out of his cell for his one hour of recreation. (*Id.*, p. 82.) The plaintiff saw the group approaching him but was not concerned. (*Id.*, p. 84.) When Rice

-4-

neared the plaintiff, he suddenly dropped his bag and tried to "jump on" the plaintiff. (*Id.*, pp. 77-78.) Rice swung at the plaintiff up to five or six times. (*Id.*, pp. 84-85.) The fight lasted about 2-5 seconds. (*Ibid.*) The officers immediately grabbed Rice and hustled him away. (*Id.*, p. 85.)

Within the next two hours or so, the plaintiff saw a nurse making her daily, evening rounds, (*Id.*, p. 88.) The plaintiff did not tell the nurse that he had been in a fight. (*Id.*, pp. 87-88.) The plaintiff did not request medical treatment or ask to see a doctor. (*Id.*, pp. 88-89.) The only type of care the plaintiff thought he might have needed was "some ice or something." (*Id.*, p. 89.) The plaintiff sustained no real injuries. (*Id.*, p. 90.) He was not bruised or bleeding, did not break any bones in the altercation, and suffered no wounds to his body or eyes. (Id., pp. 89-90.)

The plaintiff was disciplined at the jail for five rule violations in connection with the Rice incident; he also pled guilty in criminal court to battery. (*Id.*; pp. 90, 96, 100-01; Defendants' Exhibit B, Affidavit of Deputy Chief Megan Mercado, ¶ 19.)

The plaintiff accumulated numerous disciplinary reports over a short period of time during his confinement at the Lake County Jail. On September 3, 2007, a disciplinary committee found the plaintiff guilty of loud and disruptive behavior, violation of pod rules, and disruptive acts. (Plaintiff's Dep., p. 46; Mercado Affidavit, ¶ 11.)

On September 27, 2007, the plaintiff was found guilty of refusing to obey staff orders, insubordination, engaging in group demonstration, interference with headcount

procedures, interference with staff duties, and profanity. (Plaintiff's Dep., p. 51; Mercado Affidavit, ¶ 11.)

On October 1, 2007, the plaintiff was found guilty of damaging jail property, engaging in or encouraging group demonstrations or riots, interfering with staff, and acts injurious to the operation of the facility. (Plaintiff's Dep., p. 56; Mercado Affidavit, ¶ 11.)

On October 12, 2007, the plaintiff was found guilty of battery, destroying jail property, disrupting the orderly operation of the facility, and interference with staff duties as a result of the altercation with Rice. (Plaintiff's Dep., pp. 90, 9; Mercado Affidavit, ¶ 11.)

On October 15, 2007, defendant Waterloo testified in court that the plaintiff had threatened to shoot him. (Plaintiff's Dep., pp 106-07.) The alleged threat was reported to the Lake County Jail administration. (Mercado Affidavit, ¶ 11.) [At his deposition, the plaintiff denied having made such a threat. (Plaintiff's Dep., pp. 106-07.)]

On October 17, 2007, the plaintiff was found guilty of interference with staff duties, throwing any item, and profanity. (Plaintiff's Dep., p. 63; Mercado Affidavit, ¶ 11.)

On November 2, 2007, segregation officers reported to the command staff that the plaintiff was refusing to obey staff orders to return to his cell, that he was cursing at the officers, and that he was "one of the most disruptive inmates" in the administrative segregation unit. (Mercado Affidavit, ¶ 11.)

On November 7, 2007, it was reported to the jail command staff that the plaintiff had refused to give his meal tray back to correctional officers, that he had thrown the tray at the

officers, and that he had struggled with the officers when they tried to restrain and handcuff him. (Plaintiff's Dep., pp. 69-73; Mercado Affidavit, ¶ 11.)

On November 9, 2007, the plaintiff was found guilty of possession of or smuggling contraband, possession of a dangerous weapon, interference with staff duties, and committing an act disruptive to the operation of the facility. (Plaintiff's Dep., pp. 121, 124; Mercado Affidavit, ¶ 11.)

Due to the plaintiff's persistent rule violations and behavior that the jail administration deemed dangerous and disruptive, a decision was made to place him on "Level II" (heightened security) status. (Mercado Affidavit, ¶¶ 7, 11.) The decision was deemed necessary to maintain jail, inmate and staff safety and security. (*Id.*, ¶ 11.) Level II status is designed "to safeguard inmates from themselves and other inmates, and to protect jail staff from inmates who have been determined to be a threat. . . . (*Id.*, ¶ 8.) Level II status is not punitive, but administrative, in nature. (*Id.*, ¶ 10.)

The Classifications Committee reviewed the plaintiff's status on a weekly basis, considering such factors as his conduct and living conditions. (*Id.*, ¶ 12.) The plaintiff remained on Level II status for only as long as it took him to modify his behavior, to stop presenting a threat to the safety of himself and others, and to discontinue behavior that disrupted the orderly functioning of the jail. (*Id.*, ¶ 13.)

While on Level II status, the plaintiff was provided all of his meals. (*Id.*, ¶ 14.) The plaintiff was also afforded an hour a day out of his cell in order to exercise, to visit the law

library, to talk on the telephone, to interact with other inmates, and to attend to any other needs. (*Ibid.*)

The plaintiff's mattress and bedding were removed from his cell during daytime hours but returned for the evening hours. (*Id.*, ¶ 15; Plaintiff's Dep., pp. 127-28.) The reason for removing the bedding was to prevent the plaintiff from covering up his cell window or from hiding contraband within or under the mattress. (*Id.*, ¶ 16.) In his brief opposing summary judgment, the plaintiff avows that he was never charged with or disciplined for any mattress- or bedding-related rule infractions.

The plaintiff remained on Level II status for a total of forty-three days. (Mercado Affidavit, ¶ 21.) The plaintiff was upgraded to Level I status on December 19, 2007, for good behavior. (Plaintiff's Dep., p. 129.)

## DISCUSSION

No material facts are in dispute, and the defendants have established that they are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could conclude that the defendants violated his constitutional rights.

## I. FAILURE TO PROTECT THE PLAINTIFF FROM ATTACK

As a threshold concern, the court questions whether it can even entertain the plaintiff's claim that he was the victim of an assault. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would,

the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). This holding has been extended to judgments in prison disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641, 644-45 (1997). Until the sentence has been invalidated, the cause of action for damages simply "does not accrue." *Heck*, 512 U.S. at 490.

In the case at bar, the plaintiff was found guilty in administrative disciplinary proceedings of battery, among other violations, as a result of the altercation with Rice. In addition, he pled guilty in state court to battery. The plaintiff cannot legitimately claim that he was an innocent victim. A finding that Rice attacked the plaintiff rather than vice versa would seem to call into question the validity of the plaintiff's disciplinary and criminal convictions. This obstacle alone is enough to deny the plaintiff's requested relief.

But the defendants provide additional reasons. Even accepting at face value the account the plaintiff gave in his deposition, the court finds that he has failed to demonstrate that a triable issue exists as to whether he was exposed to a substantial risk of serious harm. In fact, the plaintiff has not even responded to that aspect of the defendants' motion for summary judgment.

The Constitution "imposes upon prison officials the duty to take reasonable measures to guarantee the safety of the inmates." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005), *citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). The obligation to protect encompasses a duty "to protect prisoners from violence at the hands of other prisoners." *Brown*, 398 F.3d at 909; *Farmer*, 511 U.S. at 834. To establish a

Fourteenth Amendment claim that correctional officials acted with deliberate indifference to his safety, the plaintiff must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with "deliberate indifference" to that risk. *Id.* These are questions for a jury, unless no reasonable juror could conclude that the defendants recognized a substantial risk to the plaintiff. *See, e.g., Abney v. Monahan,* 458 F. Supp. 2d 614, 620 (N.D. Ill. 2006) (Bucklo, J.), *citing Riccardo v. Rausch,* 375 F.3d 521, 526 (7th Cir. 2004).

## A. Objective Prong

To satisfy the objective prong, a plaintiff must demonstrate not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Id.* "When [Seventh Circuit] cases speak of a 'substantial risk' that makes a failure to take steps against it actionable under the Eighth or Fourteenth Amendment, they also have in mind risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault to the plaintiff.' " *Brown,* 398 F.3d at 911. This general definition of "substantial risk" includes, of course, "risks so great that they are almost certain to materialize if nothing is done." *Id.*

In the case at bar, the plaintiff has failed to establish the existence of an objective, substantial risk. During the week leading up to the October 12, 2007, altercation, the plaintiff "had words" with Rice but recalled the dispute being "something small, something

petty. It wasn't nothing serious." The plaintiff never reported any threats to his safety and never sought protection or to be kept separate from Rice. The plaintiff himself was "not really worried" about Rice before October 12, 2007. Nothing in the record indicates that Rice had either a history or propensity of violence, that he had threatened or attacked the plaintiff in the past, or that he planned to attack the plaintiff opportunistically. Even when the plaintiff saw Rice approaching him on the date of the fracas, he had no sense of danger.

The mere fact that the plaintiff and Rice had argued with each other is not, alone, enough to create an objectively serious risk of harm. Regrettably, "[p]risoners are dangerous (that's why many are confined in the first place). . . . Some level of brutality and sexual aggression among them is inevitable no matter what the guards do." *Birch v. Jones*, No. 02 C 2094, 2003 WL 21210107, *3 (N.D. Ill. May 21, 2003) (Bucklo, J.), quoting *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991). "[A]n unfortunate random act of violence in a prison . . . does not impose liability on prison officials." *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 519 (7th Cir. 2002). The plaintiff has not shown a substantial risk of serious harm.

## B. Subjective Prong

Even assuming (without finding) that the plaintiff faced an objectively significant risk of harm, he cannot attribute knowledge of that risk to the defendants.

In order to satisfy the subjective prong, a plaintiff must show that the defendant acted with deliberate indifference to the substantial risk of serious harm. *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913. The defendant "must both be aware of the facts from which

an inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913; *Riccardo*, 375 F.3d at 525. The subjective prong has two subparts: (a) knowledge of the risk, *Brown* at 913, and (b) a disregard of that risk. *Id.* at 916. Although this is a subjective test, it may be proven through circumstantial evidence. *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (internal citation omitted). The relevant inquiry is whether correctional officials actually knew about the danger that the plaintiff faced, not whether a reasonable official should have known. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

Again, even taking the facts in the light most favorable to the plaintiff, the record does not support an inference that the defendants acted with deliberate indifference to a substantial risk of known harm. It is undisputed that the plaintiff never expressed any concerns for his safety. In *Butera v. Cottey*, 285 F.3d 601 (7th Cir. 2002), an inmate's statements that he was "having problems on the block" and "I needed to be []moved" were held to be insufficient to give notice of a specific threat. 285 F.3d at 606. Even a more dire, but equally generalized, statement that a prisoner "was afraid for his life" was found to be insufficient to alert correctional officers to a specific threat. *See Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008). Similarly, actual knowledge cannot be imputed to a prison official if the plaintiff himself was unaware of a specific threat. *Guzman v. Sheahan*, 495 F.3d

-12-

852, 857-58 (7th Cir. 2007). Here, the plaintiff made no report whatsoever that he was in danger and evidently had no inkling that a fight might occur. As the plaintiff himself was not concerned about Rice, no knowledge can be imputed to the defendants.

The officers' swift response to the sudden flare-up further belies any inference of deliberate indifference. The plaintiff himself testified that as soon as the fight erupted, the officers grabbed him and pulled him away; the flare-up lasted at most five seconds by the plaintiff's own estimate, and the plaintiff suffered no injuries. Thus, even if the officers somehow knew that Rice's presence posed a risk to the plaintiff, and that they were negligent in allowing the inmates to approach each other, their reasonable response to the fight negates any inference of criminal recklessness or intent. *Compare Guzman v. Sheahan*, 495 F.3d 852, 858-59 (7th Cir. 2007) (finding no deliberate indifference where officer deviated from standard procedure but took steps to stop a prison fight); *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005) (explaining that to prove deliberate indifference, a plaintiff must show "the equivalent of criminal recklessness"); *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002) (confirming that mere or even gross negligence will not support a finding of deliberate indifference, as it requires officers to have actual knowledge of the risk). Under the facts of this case, no trier of fact could conclude that the defendants either exposed the plaintiff to an unreasonable risk of harm by failing to separate him from Rice, or acted with deliberate indifference when the fight broke out.

## II. DELIBERATE INDIFFERENCE TO MEDICAL

The plaintiff has likewise failed to establish a triable issue of fact with regard to the alleged denial of medical care. The Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Chapman v. Keltner*, 241 F. 3d 842, 845 (7th Cir. 2001). However, inattention only to serious injury or signs of serious injury amounts to a constitutional violation. *Henderson v. Sheahan*, 196 F.3d 839, 844 (7th Cir. 1999).

Here, the plaintiff has not shown that he had injury at all, let alone a serious injury that required medical attention. Within two hours of his altercation, the plaintiff saw a nurse. He did not tell her that he had been in a fight or that he needed medical treatment; furthermore, he had no visible injuries. The only type of care the plaintiff thought he might have needed was "some ice or something." Because the plaintiff sustained no real injuries, and because he never asked for help, the defendants cannot be found to have acted with deliberate indifference to a serious medical need.

## III. ADMINISTRATIVE SEGREGATION

### A. Security Classification/Placement

The plaintiff's placement in administrative segregation did not violate his constitutional rights. Inmates do not have a protected liberty interest in a particular security classification. *See Moody v. Daggett*, 429 U.S. 78, 88 & n. 9 (1976); *Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Wallace v. Robinson*, 940 F.2d 243 (7th Cir. 1991) (en banc); Burt v. Walker, No. 07 C 4284, 2008 WL 4874133, *4 (N.D. Ill. Jul. 14, 2008). Even if the plaintiff was

-14-

not unmanageable, as he contends, the matter does not implicate the federal Constitution. The court cannot sit in review of such internal jail security matters. While federal courts must take cognizance of prisoners' valid constitutional claims, federal courts cannot manage prisons, and must give substantial deference to those who do. *See, e.g. Buck v. Briley*, No. 01 C 1153, 2001 WL 619523, at *2 (N.D. Ill. May 23, 2001) (Bucklo, J.), *citing Turner v. Safley*, 482 U.S. 78, 84-85 (1987).

Administrative detention of pretrial detainee is constitutionally permissible. No due process is required if the inmate is placed in segregation "not as punishment but for managerial reasons." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002); *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979). The plaintiff's placement in administrative, non-punitive segregation as a preventive rather than a punitive measure did not require notice or a hearing and did not violate the plaintiff's constitutional rights. "[A]dministrative segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process...." *Holly v. Woolfolk*, 415 F.3d 678, 679-680 (7th Cir. 2005). Although a person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged, *see Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999), "a person lawfully detained in pretrial confinement because there is probable cause to believe that he has committed a crime is subject to certain restrictions on his liberty." *Id.* at 1003. "The government also has legitimate interests that stem from its need to manage the facility in which the individual is detained." *Bell*, 441 U.S. at 540.

The defendants state, without contradiction, that the plaintiff was placed on administrative segregation status for purposes of institutional safety and security, and not as a punitive measure. The defendants additionally point out that the plaintiff's status was reviewed on a weekly basis, and that he was restored to general population status once he modified his behavior. The plaintiff does not refutes Mercado's testimony about the reasons for his demotion: chronic displays of misbehavior that posed a risk to himself, other inmates, and staff. His being removed from the general population was not a means of additional punishment. The court finds as a matter of law that the plaintiff's placement on twenty-three hour lockdown did not amount to pretrial "punishment."

## B. Conditions in Administrative Segregation

The plaintiff's higher level security classification apparently triggered only two deprivations: he was confined to his cell most of the day, and he had no mattress during daytime hours. In order to state a conditions-of-confinement claim of constitutional significance, the challenged condition must amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The standard for determining punishment is similar whether considered in the context of the Due Process Clause or the Eighth Amendment. *Zentmeyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000). Punishment requires something more than routine discomfort. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Punishment in the constitutional sense requires allegations of extreme deprivations over an extended period of time. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Bell* at 542; *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).

Going without a mattress during the day does not approach the level of a constitutional violation. Even having to sleep on the floor, while undesirable and unfortunate, is not itself enough to give rise to a due process claim of punishment. *Hines v. Sheahan*, 845 F. Supp. 1265, 1269 (N.D. Ill. 1994); *Powell v. Cook County Jail*, 814 F. Supp. 757, 759 (N.D. Ill 1993). The plaintiff in this case was not even denied a mattress to sleep on; it was returned to him every night at ten p.m. Furthermore, for the reasons discussed in preceding paragraphs, the defendants established the need to separate the plaintiff from others. The plaintiff neither refutes Mercado's testimony about the reasons for the plaintiff's demotion, nor shows that

The relatively short duration of the plaintiff's stint in administrative segregation further weakens his claim. The plaintiff remained in administrative segregation for about forty-three days. *Contrast Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (sixteen months of pest infestation is a "prolonged deprivation") *with Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996): "conditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months.") Although the plaintiff was subject to some isolation, there is no allegation that he was denied any basic necessities or exposed to inhumane conditions. *Compare Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (objective component met where prison conditions were "strikingly reminiscent of the Black Hole of Calcutta").

It is irrelevant whether the plaintiff was ever accused of, or disciplined for, disciplinary infractions involving misuse of his mattress. It is not the function of the court to second-guess the security determinations of Lake County authorities. As noted *supra*, "[p]rison officials must be accorded wide-ranging deference in matters of internal order and security." *Whitman v. Nesic*, 368 F.3d 931, 934-35 (7th Cir. 2004) (citations omitted). The defendants have articulated legitimate reasons for removing mattresses during the day from the cells of inmates in administrative segregation. Furthermore, there is no hint that correctional officials sought to harm the plaintiff by these conditions, which are routinely imposed on all inmates classified as Level II.

In short, the plaintiff has not described conditions so objectively below standards of human dignity as to implicate constitutional concern. The plaintiff's classification as a "Level II" inmate, with its relatively minor accompanying restrictions, did not violate the plaintiff's Fourteenth Amendment rights. The defendants have stated valid administrative and penological reasons for placing the plaintiff in maximum security; furthermore, the plaintiff's classification, along with the attendant security restrictions, was reasonably related to those goals. Summary judgment is accordingly granted in favor of the defendants on the plaintiff's claim that he was placed in administrative segregation without due process.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [#41] is granted in all respects. The Clerk is directed to enter judgment in favor of the defendants pursuant to Fed. R. Civ. P. 56. The case is terminated.

Enter: *[signature]*

CHARLES R. NORGLE
United States District Judge

Date: 8-18-09